OPINION
{¶ 1} Wayne F. Stoner is appealing the judgment of the Miami County Court of Common Pleas convicting him of three counts of illegal use of a minor in nudity oriented material in violation of R.C.2907.323(A)(1), and sentencing him accordingly.
 {¶ 2} Between July of 1999 and October of 2001, Stoner secretly installed and operated a video camera in his home to videotape several young women using his bathroom. During the time at issue, Stoner filmed Samantha Koverman, dob 9-10-85; Ch'loe Godfrey, dob 8-21-84; Amanda England, dob 12-30-83; Bambi Cloutier, dob 1-7-96; and Christie Hatfield, dob 1-29-86, all without their or their parents' consent, and without their knowledge of being videotaped partially naked while using the bathroom.
 {¶ 3} A jury trial was held on December 10 and 11, 2002. The trial court granted Stoner's motion for a directed verdict regarding counts four and five, involving Hatfield and Cloutier, as there was no evidence of nudity. The jury found Stoner guilty of counts one, two and three, involving the crimes against Koverman, Godfrey, and England.[1] He was sentenced to two years incarceration on each count, with the sentences to run concurrently.
 {¶ 4} Stoner now appeals his convictions and sentences, asserting five assignment of error. We will address Stoner's first and third assignments of error simultaneously, as they are similar.
 {¶ 5} Stoner's first assignment of error:
 {¶ 6} "The trial court erred by failing to grant Appellant's motion for a new trial."
 {¶ 7} Stoner's third assignment of error:
 {¶ 8} "The court erred by not properly instructing the jury on count three regarding the name of the alleged victim."
 {¶ 9} Stoner asserts that the trial court should have granted him a new trial due to an error that resulted in the jury not being provided with the correct verdict form.
 {¶ 10} The resolution of a motion for a new trial is within the sound discretion of the trial court, and an appellate court cannot reverse the trial court's order unless there has been an abuse of discretion. State v. Shepard (1983), 13 Ohio App.3d 117, 468 N.E.2d 380. An abuse of discretion has been defined as "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 11} Furthermore, "[i]n determining the appropriateness of jury instructions, an appellate court reviews the instructions as a whole. * * If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. *** Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." Wozniak v. Wozniak (1993), 90 Ohio App.3d 400,410, 692 N.E.2d 500. (Citations omitted.) See, also, Yeager v. RiversideMethodist Hosp. (1985), 24 Ohio App.3d 54, 55-56, 493 N.E.2d 559.
 {¶ 12} "Reversible error ordinarily can not be predicated upon one paragraph, one sentence or one phrase of the general charge to the jury. Where the court's charge to the jury, considered as a whole, is not prejudicial to the objecting party, no reversible error results from a misstatement or ambiguity in a portion thereof." Snyder v. Stanford
(1968), 15 Ohio St.2d 31, paragraph three of the syllabus, 238 N.E.2d 563, following and approving State v. Porter (1968), 14 Ohio St.2d 10,235 N.E.2d 520, 43 O.O.2d 5.
 {¶ 13} The trial court instructed the jurors on the three counts prior to deliberation; however, it did not name the three victims. Prior to deliberations, at trial counsel's request, the trial court edited the verdict form to include the three victims' names. The verdict forms correctly listed the victims of counts one and two as against Samantha Koverman and Ch'loe Godfrey, respectively. However, the trial judge mistakenly placed Christie Hatfield's name on the third count form instead of Amanda England. Upon reading the jury verdict, the trial court became aware of the confusion and struck a line through Hatfield's name, and hand-wrote in ink "Amanda England."
 {¶ 14} In its decision, the trial court stated that it had only permitted photographs of the three victims at issue to be taken to the jury room for deliberations. The jury did not have access to photographs of the two victims whose cases had been dismissed. Furthermore, the jurors did not ask to review the videotape, thus the jury only had evidence of the first three counts in front of them during deliberations, and not of counts four and five.
 {¶ 15} Upon reading the verdict, the trial judge noted the "typographical error" and re-read the verdict to indicate the victim England. Stoner filed a motion for a new trial based upon this confusion, claiming that the jury did not "even consider that each count corresponded to images of a specific individual[.]" (Doc. No. 31, p. 2.) We also note that despite learning of the "typographical error," Stoner's trial counsel declined to poll the jury. Stoner claims that this "typographical error" prejudiced him.
 {¶ 16} We find that Stoner's conviction of illegal use of a minor in nudity oriented material regarding the victim England was an error worthy of reversal. Such error is prejudicial to Stoner, as the trial court determined that insufficient evidence existed to convict Stoner of the count involving Hatfield, and therefore it granted a directed verdict on that charge. However, based upon the overwhelming evidence supporting the remaining two counts, we do not believe the other two convictions should be reversed. The videotape and the photographs clearly support his convictions regarding counts one and two, and thus any error resulting from the conviction against count three would be harmless in its effect on the first two counts.
 {¶ 17} Accordingly, we sustain in part this assignment of error and reverse the trial court's ruling on the motion for a new trial.
 {¶ 18} Stoner's second assignment of error:
 {¶ 19} "The court erred by not properly instructing the jury on voyeurism."
 {¶ 20} Stoner argues that "trial counsel wanted the jury to consider a charge for voyeurism," however none was given.
 {¶ 21} We have reviewed the record and found that the only reference trial counsel made to the charge of voyeurism was in closing arguments, when he stated, "Mr. Stoner is guilty of a crime. He's guilty of the crime of voyeurism." (Tr. 167.) At no time did trial counsel advocate for an instruction on voyeurism. In fact, at the end of the discussion about jury instructions, trial counsel indicated to the trial court that all was "sufficient," and trial counsel did not even suggest the possibility of an instruction on voyeurism.
 {¶ 22} Because of this, we will review this argument under a plain error analysis. Crim.R. 30(A). State v. Wickline (1990), 50 Ohio St.3d 114,552 N.E.2d 913. Plain error does not exist unless it can be said that but for the error, the outcome of the trial clearly would have been different. State v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178,372 N.E.2d 804; State v. Sapp, Clark App. No. 99 CA 84, 2002-Ohio-6863.
 {¶ 23} In this case, we must determine whether the instructions for voyeurism would have been proper and, if so, whether the omission rises to the level of plain error.
 {¶ 24} The offense of illegal use of a minor in nudity oriented material under R.C. 2907.323(A)(1) provides that "[n]o person shall *** [p]hotograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity" and without the parent's or guardian's consent. The offense of voyeurism under R.C.2907.08(C) provides that "[n]o person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to photograph the other person in a state of nudity if the other person is a minor."
 {¶ 25} Since voyeurism is not a lesser included offense of illegal use of a minor in nudity oriented material, the court could not validly give the instruction on voyeurism, and we find no error in its failure to do so. Moreover, there was no justification to do so. As we will discuss in the fifth assignment of error, the evidence shows that Stoner photographed minors in a state of nudity without consent, and thus he was charged and convicted appropriately.
 {¶ 26} Stoner's fourth assignment of error:
 {¶ 27} "Appellant was not afforded effective assistance of counsel."
 {¶ 28} Stoner contends that he did not receive effective assistance of counsel as a result of trial counsel's failure to request an instruction on voyeurism. More specifically, he argues that trial counsel "knew" that Stoner was "incorrectly charged" but was unsure how to correct this error.
 {¶ 29} In order to prevail on his ineffective assistance of counsel claim, Stoner must show that trial counsel's performance fell below an objective standard of reasonable representation and, in addition, that prejudice resulted from trial counsel's deficient performance. State v. Bradley (1989), 42 Ohio St.3d 136, 137,538 N.E.2d 373, paragraph two of the syllabus, following Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Furthermore, "[t]o show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, at paragraph three of the syllabus.
 {¶ 30} In this instance, trial counsel's failure to request an instruction on an unrelated offense might have been a matter of trial strategy and does not establish ineffective assistance of counsel. See, generally, State v. Griffie (1996), 74 Ohio St.3d 332, 658 N.E.2d 764. However, as we have already stated, Stoner was not entitled to a voyeurism instruction for the reasons set forth in our response to Stoner's second assignment of error. Consequently, his trial counsel's failure to request such an instruction cannot be deemed to have been a performance that fell below an objective standard of reasonableness. See Bradley, supra, at 137.
 {¶ 31} Stoner's fourth assignment of error is overruled.
 {¶ 32} Stoner's fifth assignment of error:
 {¶ 33} "Appellant's conviction was against the manifest weight of the evidence."
 {¶ 34} In his final assignment of error, Stoner claims that there consists no evidence in the record that the images met the definition of "nudity." Specifically, Stoner asserts that the images were not a "lewd exhibition of nudity," and that they did not involve a graphic focus on the genitals.
 {¶ 35} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra, at 175.
 {¶ 36} After reviewing the record in this case, we cannot say that the evidence weighs heavily against Stoner's conviction. As noted above, Stoner's only argument is that the images at issue do not constitute a "lewd exhibition of nudity" nor do they involve a "graphic focus on the genitals." Instead, Stoner contends, the images focused on the pubic region, not the genitalia, and this does not fit within the statutory definition of nudity.
 {¶ 37} We disagree. Stoner was charged with illegal use of a minor in nudity-oriented material under R.C. 2907.323, which provides, in pertinent part,
 {¶ 38} "(A) No person shall do any of the following:
 {¶ 39} "(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless both of the following apply:
 {¶ 40} "(a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance;
 {¶ 41} "(b) The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used."
 {¶ 42} "Lewd" is defined as "[o]bscene or indecent; tending to moral impurity or wantonness[.]" Black's Law Dictionary (7th Ed. 1999) 919.
 {¶ 43} Reviewing the photographs and videotapes, we find that there is evidence to satisfy the "lewd exhibition" portion of the definition of nudity. The videotapes and photographs contain clear images of the pubic areas of the victims. Looked at in the light most favorable to the State, the images are obscene and indecent, and tend to show moral impurity or wantonness. Additionally, we can comprehend no other reason for the existence of these photographs and videotapes other than to appeal to the prurient interest of the person viewing the images.
 {¶ 44} Finally, we will address Stoner's argument as contained in his reply brief. He asserts that the facts in this case do not support a conviction of illegal use of a minor in nudity-oriented material, but instead support a conviction of voyeurism.
 {¶ 45} We disagree. The offense of voyeurism under R.C. 2907.08(C) provides that "[n]o person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to photograph the other person in a state of nudity if the other person is a minor." While the facts in this case might fit some of the elements of voyeurism, we believe that Stoner was charged appropriately. Furthermore, we find that the video and photographic evidence supported the verdicts in this matter, and it cannot be said that the jury's verdict created a manifest miscarriage of justice.
 {¶ 46} Accordingly, Stoner's fifth assignment of error is overruled.
 {¶ 47} Stoner's conviction and sentence relating to the victim, Hatfield, is reversed; the judgment of the trial court is affirmed in all other respects; and this cause is remanded for further proceedings consistent with this opinion.
FAIN, P.J. and GRADY, J., concur.
[1] There is confusion regarding count three, as the trial judge, prior to deliberations, had mistakenly written on the jury form the name of "Hatfield" instead of England. We will address this issue in our response to Stoner's first and third assignments of error.