Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/14/2016 09:07 AM CDT

Denice Hillyer, appellant, v. Midwest
Gastrointestinal Associates, P.C., and
Bradley Schroeder, M.D., appellees.

___ N.W.2d ___

Filed June 14, 2016.    No. A-15-138.

1. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

2. ____: ____: ____. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

3. **Malpractice: Physician and Patient: Proof: Proximate Cause.** In a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was the proximate cause of the plaintiff's alleged injuries.

4. **Rules of Evidence: Words and Phrases.** Pursuant to Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2008), relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

5. **Rules of Evidence.** Pursuant to Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2008), relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

6. ____. Pursuant to Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2008), evidence which is not relevant is not admissible.

7. **Evidence: Malpractice: Negligence: Informed Consent.** Evidence of risk-of-procedure or risk-of-surgery discussions with the patient is generally irrelevant and unfairly prejudicial where the plaintiff alleges only negligence, and not lack of informed consent.
8. **Testimony: Appeal and Error.** Error in the admission of irrelevant and inadmissible testimony does not require reversal if the trial court gave a sufficient curative instruction.
9. **Jury Instructions: Presumptions.** It is presumed a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed.

Greg Garland, of Greg Garland Law, Tara DeCamp, of DeCamp Law, P.C., L.L.O., and Kathy Pate Knickrehm for appellant.

Brien M. Welch and David A. Blagg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

Moore, Chief Judge, and Irwin and Bishop, Judges.

Bishop, Judge.
Denice Hillyer brought a medical malpractice action against Bradley Schroeder, M.D., and his employer, Midwest Gastrointestinal Associates, P.C. (MGI), based on alleged negligence in the course of performing a colonoscopy. The district court for Douglas County entered judgment on the jury's verdict in favor of Dr. Schroeder and MGI.

Hillyer appeals, alleging the trial court erred in allowing evidence of Dr. Schroeder's discussions with Hillyer and other patients regarding risks and complications associated with colonoscopies. We find that under the circumstances of this case, it was error to allow evidence of such discussions by Dr. Schroeder, because the medical malpractice action did not include a claim for lack of informed consent, making such evidence irrelevant as to whether Dr. Schroeder deviated

- 77 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

from the standard of care. However, any error in admitting such evidence does not constitute reversible error given the trial court's curative instruction to the jury. Accordingly, we affirm.

## BACKGROUND

On August 17, 2011, Hillyer went to a medical facility in Omaha, Nebraska, for a screening colonoscopy. Dr. Schroeder performed the colonoscopy. During the colonoscopy, Hillyer's colon was perforated. As a result of the perforation, Hillyer required emergency surgery to repair the perforation, was hospitalized for several weeks, and had an ileostomy bag for 5½ months until a subsequent surgery was performed. She had various other injuries, both physical and emotional, and incurred more than $300,000 in medical expenses.

Hillyer initially filed a complaint against Dr. Schroeder and MGI for medical malpractice alleging professional negligence and lack of informed consent. However, in her amended complaint, Hillyer alleged only professional negligence; her claim for lack of informed consent had been withdrawn. Specifically, Hillyer alleged that Dr. Schroeder was negligent because he used excessive force while performing a colonoscopy on her and that such excessive force caused the shaft of the "colonoscope" to perforate her colon.

Hillyer filed a motion in limine asking that the following matters not be mentioned in the jury's presence:

15. All medical consent forms, including but not limited to, consent to treat and perform the colonoscopy. . . .

16. Any discussion that [Hillyer] was aware of the risks and complications of colonoscopies. . . .

17. Any discussion regarding the practice and/or routine of explaining risks of procedures to patients.

Hillyer sought exclusion of the above matters on the basis of "NRE 402 Relevance, 403 Relevance outweighed." In their amended response to Hillyer's motion in limine, Dr. Schroeder and MGI did not object to paragraph 15. They did however object to paragraphs 16 and 17, arguing:

> This evidence is relevant to establish the facts and cir-
> cumstances leading to the perforation in this case. The
> average layperson has undergone a medical procedure
> and has experienced an informed consent discussion with
> his/her physician. Accordingly, members of the jury may
> be led to incorrectly infer that such a conversation did
> not occur in this matter between Dr. Schroeder and
> [Hillyer] if Dr. Schroeder is prohibited from discussing
> that such a conversation did occur prior to the proce-
> dure. Additionally, this discussion is relevant to estab-
> lishing the facts and circumstances of the procedure at
> issue and Dr. Schroeder's recollection of his interactions
> with [Hillyer].

During a hearing on the motion in limine, the trial court sus-
tained Hillyer's motion with regard to paragraph 15, citing no
objection by Dr. Schroeder or MGI. However, the trial court
reserved ruling on paragraphs 16 and 17.

During the jury trial, the only real issues were whether Dr.
Schroeder used excessive force during Hillyer's colonoscopy
(thereby deviating from the standard of care) and, if so, the
extent of Hillyer's damages. Hillyer testified regarding the
injuries she sustained, the treatment she underwent, and the
damages she incurred as a result of her perforated colon.

Hillyer's expert, Dr. Mark Molos, testified that the stan-
dard of care requires a physician performing a colonoscopy to
"advance the scope under the appropriate amount of exertion or
pressure." Based on his review of the case, Dr. Molos opined
that Dr. Schroeder breached the standard of care by applying
excessive force and pressure, which resulted in a "shaft loop"
perforation of Hillyer's colon. Dr. Molos testified that "[a]
shaft loop perforation by definition is caused by excessive
pressure and force." He also opined that only excessive force
would cause a perforation the size that Hillyer had, which was
6 to 7 centimeters. On cross-examination, Dr. Molos agreed
that just because a patient has a medical complication does
not mean that the doctor fell below the standard of care, that

- 79 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

complications can and do occur even when the doctor provided excellent care, and that perforations can occur even when the doctor is meeting the standard of care.

Dr. Schroeder's expert, Dr. Alan Thorson, testified that perforations are a known and accepted complication of colonoscopies and that a colon perforation can occur even when the best medical care is provided. Dr. Thorson disagreed with Dr. Molos' testimony that a large perforation like Hillyer's could have occurred only due to excessive force. Dr. Thorson opined that Hillyer's abdominal adhesions were a proximate cause of her perforation. According to Dr. Thorson, adhesions can hold the colon in a more fixed position, and when doing a colonoscopy, the endoscopist "can end up with a pressure against the colon that's enhanced because of the fixation of the adhesions even though [the endoscopist] might be putting very acceptable pressure [sic]"; the endoscopist might not even feel resistance when advancing the scope. Based on his review of the case, Dr. Thorson opined that Dr. Schroeder met the standard of care and did not use excessive force while performing Hillyer's colonoscopy.

Both experts had their credibility challenged. For example, Dr. Molos was questioned regarding his honesty, personal history of being sued for malpractice, and long history of testifying in medical malpractice cases (usually on behalf of plaintiffs). And Dr. Thorson was questioned regarding potential bias in favor of Dr. Schroeder due to patient referrals.

Dr. Schroeder testified regarding the steps he takes before doing colonoscopies: He meets the patients, gets their health histories, does a physical examination, and then begins the consent process. Over Hillyer's repeated objections, Dr. Schroeder was allowed to testify that with every patient, he goes through the list of complications and risks for the procedure, including perforations and the potential need for surgery, the alternatives, and the fact that a patient does not even have to do the examination. Hillyer also objected to Dr. Schroeder's testimony that he goes through the same process every time and

has had patients refuse the procedure after discussion. Dr. Schroeder was further allowed to testify, over objection, that he discussed potential complications and risks, including perforation and the potential need for surgery, with Hillyer prior to her colonoscopy.

Dr. Schroeder testified that he did not encounter resistance while performing Hillyer's colonoscopy and did not use excessive force to advance the colonoscope. He stated he met the standard of care when he performed Hillyer's colonoscopy.

The jury returned a unanimous verdict in favor of Dr. Schroeder and MGI, and the court entered judgment accordingly. Hillyer timely appeals.

## ASSIGNMENTS OF ERROR

Hillyer assigns that the trial court abused its discretion and committed prejudicial error in allowing evidence of Dr. Schroeder's discussions with Hillyer and other patients regarding risks and complications associated with colonoscopies.

## STANDARD OF REVIEW

[1] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Gallner v. Larson*, 291 Neb. 205, 865 N.W.2d 95 (2015).

[2] In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015).

## ANALYSIS

[3] In a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was the proximate cause of the plaintiff's alleged injuries. *Rankin v. Stetson*, 275 Neb. 775, 749 N.W.2d

- 81 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

460 (2008). In the instant case, there was no dispute that Hillyer's colon was perforated during a colonoscopy performed by Dr. Schroeder. The only real issues at trial were whether Dr. Schroeder used excessive force during Hillyer's colonoscopy (thereby deviating from the standard of care) and, if so, the extent of Hillyer's damages.

As stated above, prior to trial, Hillyer filed a motion in limine to exclude evidence of any discussions (with Dr. Schroeder) that she was aware of the risks and complications of colonoscopies and any discussion regarding the practice or routine of explaining risks of procedures by Dr. Schroeder with his patients. The reasons cited in Hillyer's motion were "NRE 402 Relevance, 403 Relevance outweighed." At the hearing on the motion, the trial court reserved ruling as to these discussions. In its order on the motion in limine, which was not filed until the day after the jury returned its verdict in the case, the court said it had reserved ruling as to these discussions but "sustained as to the actual consent form and phrases contained in medical records stating 'After receiving informed consent.'"

[4-6] Pursuant to Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2008), "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2008). Evidence which is not relevant is not admissible. Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2008).

During trial, Dr. Schroeder was allowed to testify, over Hillyer's repeated objections, regarding his discussions with Hillyer about the risks and complications of colonoscopies

- 82 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

and regarding his practice or routine of explaining risks of procedures to his patients. These are the "discussion[s]" which were at issue in Hillyer's motion in limine and on which the trial court had reserved making a ruling. As discussed next, we conclude it was error to allow such testimony.

Although this is a case of first impression in Nebraska, cases from other jurisdictions suggest that evidence of informed consent and risk-of-surgery discussions is irrelevant and unfairly prejudicial where a plaintiff alleges only negligence, and not lack of informed consent. By our count, eight states have addressed the issue. Of those eight, one state specifically dealt with risk-of-surgery discussions, rather than consent forms. See *Wright v. Kaye*, 267 Va. 510, 593 S.E.2d 307 (2004). Six states dealt with evidence of both risk-of-surgery discussions and consent forms. See, *Hayes v. Camel*, 283 Conn. 475, 927 A.2d 880 (2007); *Matranga v. Parish Anesthesia of Jefferson*, 170 So. 3d 1077 (La. App. 2015); *Schwartz v. Johnson*, 206 Md. App. 458, 49 A.3d 359 (2012); *Waller v. Aggarwal*, 116 Ohio App. 3d 355, 688 N.E.2d 274 (1996); *Warren v. Imperia*, 252 Or. App. 272, 287 P.3d 1128 (2012); *Brady v. Urbas*, 111 A.3d 1155 (Pa. 2015). And one state dealt solely with evidence of the actual consent forms in a negligence action. See *Baird v. Owczarek*, 93 A.3d 1222 (Del. 2014). All of the aforementioned cases found the evidence inadmissible.

In *Wright v. Kaye, supra*, a patient brought a medical malpractice action against her surgeon, alleging he negligently performed a procedure. The patient filed a motion in limine seeking to exclude any testimony regarding preoperative discussions between her and her surgeon concerning the risks of surgery. The patient argued that because she did not claim the surgeon failed to obtain her informed consent, any testimony concerning discussion of the risks of surgery was not relevant to either negligence or causation and would only confuse the jury. The trial court denied the motion, ruling, "'If you don't show that [the doctor advised the patient concerning any risk prior to surgery], immediately you've implied that maybe this

- 83 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

doctor is negligent to begin with.'" *Id.* at 528, 593 S.E.2d at 317. On appeal, the Virginia Supreme Court determined that under the facts of that case, the trial court's ruling was erroneous. The Virginia Supreme Court stated:

> In resolving this issue, it is a particularly salient fact that [the patient] does not plead or otherwise place in issue any failure on the part of the [surgeon] to obtain her informed consent. Her claim is simply that [the surgeon] was negligent by deviating from the standard of care in performing the medical procedure at issue.
>
> Seen in that context, evidence of information conveyed to [the patient] concerning the risks of surgery in obtaining her consent is neither relevant nor material to the issue of the standard of care. Further, the pre-operative discussion of risk is not probative upon the issue of causation: whether [the surgeon] negligently performed the procedure.
>
> [The patient's] awareness of the general risks of surgery is not a defense available to [the surgeon] against the claim of a deviation from the standard of care. While [this patient] or any other patient may consent to risks, she does not consent to negligence. Knowledge by the trier of fact of informed consent to risk, where lack of informed consent is not an issue, does not help the plaintiff prove negligence. Nor does it help the defendant show he was not negligent. In such a case, the admission of evidence concerning a plaintiff's consent could only serve to confuse the jury because the jury could conclude, contrary to the law and the evidence, that consent to the surgery was tantamount to consent to the injury which resulted from that surgery. In effect, the jury could conclude that consent amounted to a waiver, which is plainly wrong. *See Waller v. Aggarwal,* 116 Ohio App.3d 355, 688 N.E.2d 274, 275-76 (1996).

*Wright v. Kaye*, 267 Va. 510, 528-29, 593 S.E.2d 307, 317 (2004). Accordingly, the Virginia Supreme Court held that the

trial court erred in failing to grant the motion in limine regarding preoperative discussions concerning the risks of surgery. The court reversed the summary judgment in favor of the surgeon and remanded the cause for further proceedings.

In *Hayes v. Camel*, 283 Conn. 475, 927 A.2d 880 (2007), the patient filed a medical malpractice action against a neurosurgeon and his assistant based on alleged negligence in the course of performing a surgery. The patient filed numerous motions in limine seeking to preclude the admission of documentary or testimonial evidence pertaining to informed consent and preclude any discussion or argument pertaining to his injuries as a ""risk of the procedure."" *Id.* at 480, 927 A.2d at 885. The trial court denied the motions. At trial, the court did not permit the words "informed consent" to be used, and it refused to admit the consent forms into evidence. On appeal, the plaintiff claimed that the trial court improperly denied his motions in limine to preclude, and overruled his objections to, the admission of evidence that included (1) the surgeon's testimony that he informed the plaintiff that nerve damage was a risk of the surgery and (2) notes to that effect from the preoperative consultation between the plaintiff and the surgeon. The sole issue on appeal was whether, in a medical malpractice action without a claim of lack of informed consent, the trial court properly admitted testimonial and documentary evidence that the defendant surgeon had informed his patient of the risks of the medical procedure in question. The Connecticut Supreme Court, after citing *Wright v. Kaye, supra*, and *Waller v. Aggarwal*, 116 Ohio App. 3d 355, 688 N.E.2d 274 (1996), said:

> We conclude that the trial court abused its discretion when it admitted evidence of the risks of the [surgery] in the form of their disclosure to the plaintiff. The admission of evidence that [the surgeon] had told the plaintiff of those risks, namely, his testimony and the office notes to that effect, implicates the concerns about jury confusion raised by our sister state courts that have considered

the issue of the admissibility of informed consent evidence in medical malpractice cases without informed consent claims. See Conn.Code Evid. § 4-3. Put differently, admission of testimony about what the plaintiff specifically had been told raised the potential that the jury might inappropriately consider a side issue that is not part of the case, namely, the adequacy of the consent. . . . [I]t was unduly prejudicial to admit such evidence [of the risks of a surgical procedure] in the context of whether and how they were communicated to the plaintiff. Rather, such evidence is properly admitted, without this risk of confusion and inappropriate prejudice, in the form of, for example, testimony by the defendants or nonparty expert witnesses about the risks of the relevant surgical procedures generally.

*Hayes v. Camel*, 283 Conn. 475, 487-88, 927 A.2d 880, 889-90 (2007). Accordingly, the Connecticut Supreme Court concluded that the trial court improperly admitted the challenged evidence pertaining to whether the risks of the procedure were communicated to the plaintiff. However, the court found that such error was harmless because

the trial court's charge to the jury specifically addressed the relationship of surgical risk and negligence, and stated that "simply because a particular injury is considered to be a risk of the procedure does not mean that a physician is relieved of the duty of adhering to the appropriate standard of care and does not mean that because the injury was a risk of the procedure injury did not result from a failure to conform to the standard of care."

*Id*. at 491-92, 927 A.2d at 892. The Connecticut Supreme Court presumed that the jury followed the instruction, thereby mitigating the prejudice and risks of inappropriate inferences attendant to the improperly admitted evidence.

We note that the approach among other jurisdictions is to find that evidence of informed consent and risk-of-surgery discussions is generally irrelevant where a plaintiff alleges

only negligence; they then state that even if relevant, the evidence is prejudicial. Other jurisdictions have generally not adopted a per se rule of exclusion. As noted by the Pennsylvania Supreme Court in *Brady v. Urbas*, 111 A.3d 1155 (Pa. 2015), sometimes the evidence may be relevant to the question of negligence, if, for example, the standard of care requires that the doctor discuss certain risks with the patient. And in *Viera v. Cohen*, 283 Conn. 412, 927 A.2d 843 (2007), the patient's negligence claim was based in part on the doctor's failure to properly assess her risk factors. On appeal, the doctor claimed that the trial court improperly allowed the patient's expert to testify, over the doctor's relevancy objection, as to the patient's lack of informed consent when there was no informed consent claim in the case. The Connecticut Supreme Court found that even though the patient did not assert a lack of informed consent claim, the testimony was directly relevant to the patient's claim that the doctor failed to recognize that the patient's delivery presented a risk of shoulder dystocia (i.e., when the baby's shoulders become lodged during a vaginal delivery requiring delivery of the child within minutes to avoid risk of neurological injury or death). The court said that if, as the patient's experts had testified, the standard of care would have obligated the doctor to discuss the risks of vaginal delivery with her, the doctor's failure to do so would provide evidence that he had not in fact recognized that those risks were present. The court concluded that the trial court did not abuse its discretion in concluding that the testimony was relevant. Moreover, the trial court in *Viera* expressly instructed the jury that informed consent was not an issue in the case.

[7] We hold, as a matter of first impression, that evidence of risk-of-procedure or risk-of-surgery discussions with the patient is generally irrelevant and unfairly prejudicial where the plaintiff alleges only negligence, and not lack of informed consent. However, we specifically decline to adopt a per se rule of exclusion. Given our holding, which is in accord with

other state courts, we now turn our analysis to the facts of the case before us.

The trial court allowed Dr. Schroeder to testify over objection that prior to performing a colonoscopy, it is his practice to talk to his patient about complications of the procedure and specifically list the risks and complications, including perforation and the potential need for surgery. He testified:

> I give the same consent every single time because you're required — there's basic elements of that requirement that you just have to include every time, risks, benefits, alternatives. And even the fact that they don't have to do the exam and there's other things they can do to get screened for colonoscopy [sic].

At that point, Hillyer's counsel requested a sidebar, during which the following discussion was had:

> [Hillyer's counsel]: Your Honor, we object to this line of questioning for the reasons stated, 402, 403, the motion in limine, and now he's also going — he's also using the word "consent" and going into that and we already have a sustained motion in limine regarding informed consent.

> [Defense counsel]: Your Honor, I think I'm following the motion in limine. We've already discussed this. He's not — if the witness was permitted to testify, he would say he actually goes for the statistical rate of perforation. But following the Court's order, he's not going to talk about that. But he has to be able to talk about how he talks to his patients and gets their permission before they undergo a procedure, and he does it every time with all of the colonoscopies. This is part of his normal practice. And I — they certainly went into it with their expert, and I did on cross-examination. It's a known risk of the procedure. So I don't know how I can't elicit that from my client.

> THE COURT: I think the issue that we are addressing has to do with him using the word "consent." I think

- 88 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

when we were discussing this in the motion in limine it was going to what the risks are and things of that nature, but we need to avoid any implication that she somehow consented to all of these risks by going through with the procedure. And I think that's in the rulings that have come out in other jurisdictions and other states. So as far as the motion in limine, the portion of the actual medical records that is the signed consent form is out, and that one phrase in the medical ruling it says after I received informed consent.

What I would say at this point on the objection is to try and steer clear of using the word "consent" when he's talking about going through the risks and things of that nature.

. . . .

. . . [W]hat we're trying to avoid here are some of the issues that have come up that we've discussed as far as there being some insinuation to the jury that she somehow assumed the risk of going through this procedure. Getting away from the actual issue of the case which is whether or not there was excessive force. . . .

[Defense counsel]: After he explains this to the patient and they understand it, because he's not — I don't want them to get the implication that he says all this to them and they don't have a choice, that they have to do this. Can he say after I explain this I make sure they understand it?

THE COURT: I don't think there's a problem with saying make sure they understand it. But when you get into saying they had a choice to do it or not to do it, I think we get into the issue that they somehow consented to all of the risks.

[Defense counsel]: Maybe the solution to all of this is maybe an instruction to the jury that you can say the patient — we can formulate one, to say that they

- 89 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

consented to the procedure does not mean that they con-
sented to — that the physician would be below the stan-
dard of care in performing the procedure.

[Hillyer's counsel]: It's the word "consent." Move to
strike, and ask the jury to disregard — just instruct them
to disregard the use of the word "consent" if he's getting
really close to the consent form.

After the sidebar, the court struck Dr. Schroeder's statement,
"'I give the same consent every single time,'" and instructed
the jury to disregard the same.

Direct examination of Dr. Schroeder resumed as follows:

[Defense counsel:] Doctor, since your fellowship and
through your practice, do you meet with your patients and
explain to them — regardless of what the procedure is, if
it's an endoscopy, colonoscopy, ERCP, do you try to sit
down with them and have them understand the procedure
that you're about to perform?

[Hillyer's counsel]: Objection. 402, 403 again.

THE COURT: Overruled.

[Hillyer's counsel]: Motion in limine.

THE COURT: Overruled.

[Dr. Schroeder:] I don't think that I can proceed with
an exam unless the person undergoing the procedure or
those responsible for them truly understand what they're
getting involved in.

. . . .

[Defense counsel:] And as it relates to a colonoscopy,
one of the things that you try to get the patient to under-
stand is that there are potential complications with that
procedure. Is that fair?

[Hillyer's counsel]: Objection. 402, 403, motion in
limine.

THE COURT: Overruled.

[Dr. Schroeder:] I do try to make sure that the patient
understands those complications.

[Defense counsel:] Okay. And as it relates to perforations, do you try to get the patient to understand that that is a potential complication of the procedure?

[Dr. Schroeder:] Very much so.

[Hillyer's counsel]: Objection. 402, 403, motion in limine, and move to strike.

THE COURT: Overruled.

[Defense counsel:] And is a part of that attempt, talk to that patient so that they understand? I think you mentioned earlier to a question that one of the things that you do, you mention to the patient the potential that a perforation may occur and might require surgery; is that fair?

[Hillyer's counsel]: Objection. 402, 403, motion in limine.

THE COURT: Overruled.

At that point, Hillyer's counsel requested another sidebar, during which the following discussion was had:

[Hillyer's counsel]: This needs to stop. We're getting way — we're just spending this time on all of this stuff he tells the patients. Why don't you get to the colonoscopy?

THE COURT: What's the objection?

[Hillyer's counsel]: The objection is 402, 403, relevance, motion in limine. We're getting right to the heart of the thing we've dealt with all the time about this same issue. This is not a case about informed consent. We understand that. Let's move it.

. . . .

THE COURT: This brings up a lot of the arguments that were made at our pretrial motions, one of them being that I understand the informed consent part of it. I understand not getting into some insinuation to the jury that she somehow consented to this procedure; therefore, you just have to deal with whatever happens. The problem that I see at this point is . . . Hillyer's own

- 91 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

testimony that she doesn't even remember talking to the doctor before the procedure at all. So that brings up some of this issue as far as what even happened during the procedure.

So while I understand we need to get to the heart of the matter, the objection is overruled in that he's just explaining generally that he goes through the risks. He's been told not to mention anything with regard to consent. And I would expect that Counsel is not going to argue in any way that she somehow consented to what happened to her. And . . . I would ask for both sides to submit a jury instruction so I can see the language that you would like the Court to consider with regards to just because she went through with this procedure doesn't mean she somehow consented to this happening to her or that it somehow negates professional responsibility.

After the sidebar concluded, Dr. Schroeder was allowed to testify, over objection, that it is his "custom and practice to repeat the same discussion for every colonoscopy with every patient every time." He was also allowed to testify, over objection, "I ask the patient after my discussions with them if they still wish to proceed with the examination. And, yes, patients have said they didn't want to do the exam at that point, got their clothes on, went home."

Dr. Schroeder also testified about his discussions with Hillyer:

[Defense counsel:] Would you have had a discussion consistent with what you've already testified to with . . . Hillyer about the colonoscopy and the procedure that you were about to perform and the potential complications and risk are[a]s of the procedure?

[Dr. Schroeder:] Yes.

[Hillyer's counsel]: Objection. 402, 403, motion in limine, move to strike and instruct the jury to disregard.

THE COURT: Objection is overruled. The answer will stand.

[Dr. Schroeder:] At the completion of this physical examination I then discussed the risks, benefits, options, complications of the examination as well as the sedation.

[Defense counsel:] And would that have included, as you discussed earlier as is your custom and habit the thousands of times that you have done it, concerning a potential for a perforation and the potential need for surgery if that in fact resulted?

[Dr. Schroeder:] Yes.

[Hillyer's counsel]: Objection. 402, 403, motion in limine, move to strike and instruct the jury to disregard.

THE COURT: Objection is overruled. The answer will stand.

We first focus on Dr. Schroeder's testimony as it relates to discussions he had with Hillyer specifically. Dr. Schroeder and MGI argue:

Evidence that a perforation is a known risk of a colonoscopy and can occur even when a physician is complying with the standard of care is obviously relevant. It is, in fact, necessary in order that the jury not find [Dr. Schroeder and MGI] negligent solely because of the perforation.

Brief for appellees at 19. We agree. However, the problem occurs when evidence of the risks comes in the form of their disclosure to the plaintiff. See *Hayes v. Camel*, 283 Conn. 475, 927 A.2d 880 (2007). When evidence of the risks comes in the form of their disclosure to the patient (i.e., that a patient was informed of the risks), such evidence goes toward the patient's consent to the procedure, not negligence. In cases where consent is not at issue, evidence of what a patient was told raises the potential that the jury might inappropriately consider consent. To avoid confusion and inappropriate prejudice, evidence of the risks of a procedure is instead properly admitted in the form of general testimony by the defendants or nonparty expert witnesses. *Id.* The defendant or nonparty expert witnesses can testify about the risks of the relevant

- 93 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

surgical procedures generally (e.g., that perforations are a risk of colonoscopies), but cannot testify that the patient was informed of such risks prior to the procedure. In this manner, the jury hears evidence that something is a risk of a procedure, and is less likely to wrongly assume that the doctor was negligent just because something bad happened. But the jury will also not hear evidence that the patient was informed of the risk, and thus will not be likely to inappropriately consider consent—that if the patient consented to the procedure, he or she somehow consented to any negligence. And in the present case, experts on both sides did testify that perforations can occur even when a physician is complying with the standard of care; such testimony was proper.

However, testimony given by Dr. Schroeder relating to discussions he had with Hillyer is exactly the kind of testimony that courts in other jurisdictions have found to be irrelevant and unfairly prejudicial, given that Hillyer alleged only negligence, and not lack of informed consent. In the present case, the jury had to determine whether Dr. Schroeder used excessive force during Hillyer's colonoscopy (thereby deviating from the standard of care). Evidence of information conveyed to Hillyer concerning the risks of the procedure, including perforations, had no bearing on the issue of the standard of care. See *Wright v. Kaye*, 267 Va. 510, 593 S.E.2d 307 (2004). "Put simply, what *plaintiff* was told bears no relationship to what *defendant* should have done." *Warren v. Imperia*, 252 Or. App. 272, 280, 287 P.3d 1128, 1132 (2012). Furthermore,

> [e]vidence that plaintiff was told about the risks of surgery raised the possibility that the jury might consider whether plaintiff assumed the risks of the surgery or consented to defendant's negligence. In other words, the evidence had a significant potential to confuse the jury or lead it to decide the case on an improper basis.

*Id*. at 281, 287 P.3d at 1132-33.

The fact that the trial court did not permit Dr. Schroeder to use the word "consent" is of no import in our final

- 94 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

determination; nor is the fact that the trial court granted Hillyer's motion in limine with regard to the actual consent forms. See *Hayes v. Camel*, 283 Conn. 475, 927 A.2d 880 (2007) (concluding trial court abused its discretion in admitting evidence of risks of surgery in form of their disclosure to plaintiff despite trial court's not permitting words "informed consent" to be used and refusing to admit consent forms into evidence). Nor are we persuaded by the trial court's reasoning that "Hillyer's own testimony that she doesn't even remember talking to [Dr. Schroeder] before the procedure at all . . . brings up some of this issue as far as what even happened during the procedure." Again, what happened before the procedure with regard to discussion of risks has no bearing on whether or not Dr. Schroeder used excessive force during the procedure. Furthermore, Hillyer was not questioned on direct examination about conversations she had with Dr. Schroeder; testimony regarding Hillyer's memory of preprocedure discussions came in during cross-examination and referenced her deposition testimony, which was not received into evidence or otherwise before the jury.

We note that in their brief, Dr. Schroeder and MGI argue that Hillyer's "specific objection" at trial was to the word "consent" and that she now "attempts to expand the objection from 'consent' to the fact that [she] was informed of the risks of surgery." Brief for appellees at 15-16. A complete review of the record shows that Hillyer is not expanding her objection. After Dr. Schroeder testified that he "give[s] the same consent every single time," Hillyer requested a sidebar and objected based on "402, 403, the motion in limine." After further discussion on the matter, she did object to the word "consent." Throughout the remainder of Dr. Schroeder's testimony regarding discussion of risks, Hillyer repeatedly objected, citing "402, 403," and the motion in limine. Hillyer's motion in limine, particularly paragraphs 16 and 17, sought to exclude any discussion that Hillyer was aware of the risks and complications of the colonoscopies and any discussion regarding the practice or

routine of explaining risks of procedures to patients. The reasons cited in Hillyer's motion were "NRE 402 Relevance, 403 Relevance outweighed"; these were the same objections raised by Hillyer at trial. Hillyer has not expanded her objection on appeal.

Dr. Schroeder and MGI further argue that given "the context of this case," brief for appellees at 20, the trial judge was correct in admitting testimony that Hillyer was informed of the risks. They argue that a "theme pressed by [Hillyer] at trial, starting in voir dire, was the mental aspect of her surprise in awaking in the hospital after the colonoscopy" and that Hillyer "questioned [potential jurors] in a fashion to imply to the jury that it was highly unusual for a person not to go home immediately following a colonoscopy," such that Hillyer's knowledge of possible complications should be allowed. *Id.* They also cite to exhibits placed into evidence (i.e., medical records from Hillyer's surgeries following her colonoscopy); those records included statements that Hillyer was informed of the risks of surgery and decided to proceed. Our review of the record reveals no "mental aspect of . . . surprise" on Hillyer's part. See brief for appellees at 20. Hillyer's questioning during voir dire was benign and reveals nothing other than counsel's efforts to learn of potential jurors' experiences with colonoscopies, ferret out possible bias, and acquire a fair jury pool. Finally, nothing in the medical records regarding Hillyer's subsequent surgeries with other doctors placed Dr. Schroeder's discussions with Hillyer regarding the colonoscopy in issue. See *Fiorucci v. Chinn*, 288 Va. 444, 764 S.E.2d 85 (2014) (finding that trial court did not err in excluding from evidence defendant doctor's risk-of-surgery discussions with patient, even though one of expert witnesses referred to discussions with his own patient). In sum, nothing in the record before us persuades us to deviate from the general rule that evidence of risk-of-procedure or risk-of-surgery discussions is irrelevant where a plaintiff alleges only negligence, and not lack of informed consent.

We find that under the facts of this case, any discussion that Dr. Schroeder informed Hillyer of the risks and complications of colonoscopies was neither relevant nor material to the issue of whether Dr. Schroeder used excessive force during Hillyer's colonoscopy, and therefore, the discussions were inadmissible. See §§ 27-401 and 27-402. For the same reasons, we find that evidence of Dr. Schroeder's discussions with his other patients regarding risks and complications associated with colonoscopies was improperly admitted, because such discussions go to the issue of consent, not negligence. In particular, Dr. Schroeder's testimony that some patients, after having risk discussions with him, have decided not to proceed with the examination could lead a jury to improperly conclude that because Hillyer did proceed with the procedure, she somehow consented to negligence or waived a claim of negligence.

[8,9] Having concluded that admission of such evidence was erroneous, we now consider whether its admission requires reversal. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015). The admission of Dr. Schroeder's irrelevant and inadmissible testimony regarding risk-of-procedure discussions was prejudicial as previously discussed; however, under the circumstances of this case, such error does not require reversal, because the trial court gave a sufficient curative instruction. As we noted earlier, in *Hayes v. Camel*, 283 Conn. 475, 491-92, 927 A.2d 880, 892 (2007), although the Connecticut Supreme Court concluded that it was unduly prejudicial to admit evidence of the risks of a surgical procedure in the context of whether and how they were communicated to the plaintiff, the court nevertheless held that "the trial court's charge to the jury specifically addressed the relationship of surgical risk and negligence," by noting that the mere fact a particular injury is a risk of a procedure does not mean it "'did not result from

- 97 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

a failure to conform to the standard of care.'" Similarly here in the case before us, the trial court's instructions to the jury specifically addressed the relationship of the risks of the procedure and negligence; they stated:

> A healthcare provider has the duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other healthcare providers engaged in a similar practice in the same or similar communities.
>
> *The fact that a patient goes through with a procedure having been advised of the risks of such procedure does not change or alter the duty of the health care provider to possess and use the care, skill and knowledge ordinarily possessed and used under like circumstances by other healthcare providers engaged in a similar practice in the same or similar communities.*

(Emphasis supplied.) In *Hayes v. Camel, supra*, the Connecticut Supreme Court presumed the jury followed the instruction, thereby mitigating the prejudice and inappropriate inferences attendant to the improperly admitted evidence. We conclude the same here. See, also, *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013) (certain testimony prejudicial and not harmless; no curative instruction given); *Baker v. Racine-Sattley Co.*, 86 Neb. 227, 233, 125 N.W. 587, 590 (1910) (finding that court's instruction to jury to disregard certain testimony cured any error in case at bar, but recognizing that "in some cases error in the reception of incompetent evidence cannot be cured by an instruction to the jury to disregard it"). It is presumed a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded. *In re Estate of Clinger, supra*. There is nothing in the record before us to affirmatively show that the jury disregarded the instruction above; further, in the present case, two competing experts testified as to whether Dr. Schroeder used excessive force (thereby deviating from the standard of care),

- 98 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
HILLYER v. MIDWEST GASTROINTESTINAL ASSOCS.
Cite as 24 Neb. App. 75

and it was for the jury to decide which one to believe. Both experts testified that perforations were a risk of the procedure; each differed in his testimony as to whether the perforation which occurred during Hillyer's colonoscopy was caused by excessive force. Although we conclude that the curative instruction in this case sufficiently mitigated the prejudice of the improperly admitted evidence, particularly in light of the other evidence available to the jury to reach its conclusion, we caution that curative instructions may not always overcome the prejudice and reversal may be warranted. See *Baker v. Racine-Sattley Co., supra.*

## CONCLUSION

For the foregoing reasons, we find that under the circumstances of this case, it was error to allow evidence of Dr. Schroeder's risk discussions with Hillyer and other patients. However, any error in admitting that evidence does not constitute reversible error given the trial court's curative instruction to the jury. Accordingly, we affirm.

AFFIRMED.